## The B. F. Hart.

### Murguiondo v. The B. F. Hart.

*(District Court, D. Maryland. July 3, 1888.)*

**Shipping—Liability of Vessel for Tort—Taking and Carrying Away Guano.**

The libelant, claiming by grant from the republic of Mexico the right to take the guano from the Island of Arenas Cay, alleged that the master of the schooner had willfully, fraudulently. and unlawfully loaded and carried away from the island a cargo of guano, and sold it in Philadelphia, and libeled the schooner for the value of the cargo. *Held* that, as the only proof adduced

showed that the master had, as carrier, under a charter-party with a charterer who claimed a right to take the guano, received it on board at the island, without any knowledge of libelant's claim. and had delivered it to the consignees in Philadelphia, in accordance with his charter-party, without notice or information of any other claimant or ownership, that there was nothing proved upon which a right of action against the schooner could be based.

*(Syllabus by the Court.)*

In Admiralty. Libel for carrying away guano.

*B. P. Moore,* for libelant.

*R. H. Smith,* for respondent.

MORRIS, J. This is a libel against the schooner B. F. Hart, alleging that the master of the schooner, in February, 1885, put into the island of Arenas Cay, in the Gulf of Mexico, and there loaded from the island, and took away, a cargo of guano, and carried it to Philadelphia, and sold it to J. J. Allen's Sons, thereby willfully, fraudulently, and unlawfully depriving the libelant of the value of the guano, amounting to $7,500. The proof on behalf of the libelant tends to show that the republic of Mexico claimed possession, jurisdiction, and control of Arenas Cay, which is a small, uninhabited coral island, about 60 miles from the main-land of Yucatan, and had conceded to the libelant the right to take the guano deposits from it for a period of five years, upon payment of certain royalties, and compliance with certain customs regulations. It was, as libelant avers, while this concession was in force, and after he had made considerable expenditures on the island to facilitate the shipment of the guano, that the master of the schooner B. F. Hart went there and carried away the cargo in question. The testimony on behalf of the claimants of the schooner shows that the schooner being at Pensacola, Fla., on the 12th of February, 1885, her master, through a shipbroker at that place, chartered his vessel to the National Fertilizer Company of Philadelphia, through its agent, William M. Frost, for a voyage from Arenas Cay to a port north of Hatteras, not east of New York, as ordered at Hampton roads. The charter-party was prepared upon the usual printed form, and signed by the parties, and stipulated that the charterers guarantied safe anchorage at Arenas Cay, and that they would furnish the vessel a full cargo of guano in bulk, paying for the use of the vessel on proper delivery of cargo at port of discharge four dollars per ton of 2,240 pounds; 20 working days for loading, and dispatch for discharge, and $30 a day demurrage. It was also stipulated that the vessel should take down from Pensacola 13 men, some tools, provisions, and lumber, and two boats, and on homeward voyage land the men off Pensacola at charterers' expense; the charterers furnishing provisions, wood, and water for the men on both passages. The charterers also agreed to advance $300 at Pensacola against freight. This charter-party having been executed, the master testifies that the schooner cleared from Pensacola for Arenas Cay, taking the charterers' agent, Scott, and about a dozen laborers employed by him, and, arriving at the island, received on board a cargo of guano, which he supposed belonged to the charterers; that he had no information at all except what he derived from Scott,

and had no information or knowledge that it belonged to any one else; that there was no one living on the island, and that he saw no one there except those whom Scott took there; and that he never had any notice or information that the libelant claimed any interest in the guano, and never heard of him at all until the libel was filed, in October, 1885; that on the return voyage the schooner sprung a leak, and put into Pensacola in distress, where the cargo was discharged, the vessel repaired, and after a delay of over two months the cargo was taken on board again, and carried to Philadelphia. There, upon the vessel's arrival, the cargo, by charterers' order, was delivered to J. J. Allen's Sons. That none of the owners of the schooner had any interest in the cargo except the freight. On the part of the libelants there is no testimony which controverts these statements of the master, and no evidence whatever to affect the owners of the schooner, or any of them, with any knowledge that the schooner was not engaged in a perfectly honest employment for the sole purpose of earning freight, or to show that they had any interest in the cargo itself. It is apparent, therefore, that this is not a case in which the master, in the course of his employment, has actually or constructively converted to the use of the vessel or its owners the property of others. All that the master obtained was the freight earned under the charter-party, which was the usual freight for such a voyage. There is no evidence to show that the master had any reason to suppose that his charterers had not a right to take the guano. He received and delivered it openly, and without notice of any claim asserted by the libelants. Having received the cargo innocently, and having delivered it according to his contract of carriage, without notice that the libelant claimed to be the true owner of it, I cannot see how any right of action has arisen upon which a recovery against the schooner can be based. Hutch. Carr. § 408; Wood's Browne, Carr. § 276. The libel must be dismissed, with costs.